**Stephen PERDEAUX, et. al., Plaintiffs,**

**v.**

**UNITED STATES of America, et. al., Defendants.**

**No. 99 CV 8691 NG.**

United States District Court, E.D. New York.

June 5, 2002.

Lawrence A. Berger, Mahon & Berger, Garden City, NY, for Plaintiffs.

Susan L. Riley, U.S. Atty., Eastern Dist. of NY, Brooklyn, NY, for Defendants.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiffs, 138 field witness security specialists for the United States Marshals Service ("USMS"), bring this action for a writ of mandamus against the United States; George W. Bush, President of the United States; John Ashcroft, United States Attorney General; Louie McKinney, Acting Director of the USMS; and Steven Cohen, Acting Director of the Office of Personnel Management ("OPM").[1] Plaintiffs allege that defendants deprived them of their property in violation of the Due Process Clause of the Fifth Amendment by failing to implement the reclassification of their civil service positions from General Schedule ("GS") 1811–12 to GS 1811–13 in violation of 5 C.F.R. 511.701. Defendants move pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss plaintiffs' complaint in its entirety, or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs also move for summary judgment.

### Motion to Dismiss

On March 20, 1996, plaintiffs filed a civil action in this court seeking an injunction to promote plaintiffs to a GS–13 position. By order dated January 23, 1999, the complaint was dismissed for failure to exhaust administrative remedies before the Office of Special Counsel ("OSC"), as required by the Civil Service Reform Act ("CSRA"), 5

---

**1.** The individual defendants have been automatically substituted pursuant to Fed.R.Civ.P. 25(d).

U.S.C. §§ 1212(a)(2), 1214(a)(1)(A), for challenges to "prohibited personnel practices." *Perdeaux v. United States,* 33 F.Supp.2d 187 (E.D.N.Y.1999) (*"Perdeaux I"*). Following a determination by the OSC that the USMS did not violate the law, plaintiffs commenced the present action.

■ Defendants move to dismiss this action for lack of subject matter jurisdiction. On appeal from a determination by the OSC that an agency did not engage in a prohibited personnel practice, "[j]udicial review of an Office of Special Counsel decision is limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry on which to base its disposition of an employee's petition." *Tiltti v. Weise,* 155 F.3d 596, 600 (2d Cir.1998). Since plaintiffs do not allege that the OSC failed to perform an adequate inquiry, defendants argue that this court lacks jurisdiction.

Plaintiffs argue that this court nevertheless has jurisdiction because plaintiffs raise a constitutional claim for equitable relief. As discussed in *Perdeaux* I, the Court of Appeals for the Second Circuit has not ruled on the issue of whether the CSRA precludes government employees from seeking equitable relief in federal district courts for allegedly unconstitutional personnel actions, *Tiltti v. Weise,* 155 F.3d at 602, and other Courts of Appeals are split on the issue. *Perdeaux,* 33 F.Supp.2d at 191–92 (declining to reach the issue because the constitutional claim was unexhausted). Once again, this court need not determine whether the CSRA precludes government employees from seeking injunctive relief for allegedly unconstitutional practices because, even if there were jurisdiction, defendants are entitled to summary judgment on the merits of plaintiffs' due process claim.

## Motion for Summary Judgment

*1. Facts:*

Unless otherwise indicated, the following facts are undisputed.

In 1993, the USMS, which is a constituent agency of the Department of Justice ("DOJ"), established a group of Witness Security Regional Supervisors to review all field witness security specialist positions. As a result of this review, the USMS wrote a new position description for plaintiffs in June 1993, which would upgrade them from their GS 1811–12 grade to the GS 1811–13 grade. On June 25, 1993, Eugene Coon, Jr., Chief of the Witness Security Division, and John Cleveland, the Deputy Chief of the Witness Security Division, prepared an OPM Form OF–8, describing the new GS–13 position. The OF–8 form was forwarded to the USMS Headquarters for review by a Classification Specialist. On July 7, 1993, Kaye McWhirter, a Classification Specialist who, according to a memorandum submitted by plaintiffs, had received authority from the USMS Director to take "final action" on classifications within the USMS for grades below GS–15, certified that the job description had been certified and graded as required by Title 5 of the U.S.Code. However, plaintiffs have never been promoted to the GS–13 positions.

In 1970, the U.S. Civil Service Commission ("Commission") initiated a policy, FPM Letter No. 511–7, that required agencies to consult with the Commission before implementing any reclassification that affected more than 50 positions. In 1973, the Commission lowered this number from 50 to 20, and cautioned agencies against premature communication of tentative classification decisions. DOJ Order 1511.4B. Pursuant to this Commission policy, DOJ enacted DOJ Order 1511.4B on October 29, 1976, which provides as follows:

5. *POLICY OF THE U.S. DEPART-MENT OF JUSTICE.* Heads of bureaus shall refer to the Personnel and Training Staff for review of any proposed action which will affect the grade of 20 or more positions, either immediately or through "ripple" effect, in their respective bureaus.

a. *Submissions.* The bureau's submission should contain, in duplicate, copies of the position descriptions, a detailed evaluation of the position(s) in accordance with or consistent with Commission standards, organizational charts, functional charts, staffing data, and other relevant information.

b. *Action by Personnel and Training Staff.* The Personnel and Training Staff will evaluate each proposal as to accuracy of classification and soundness of job design and take one of the following actions:

(1) If it can support the proposal, the Personnel and Training Staff will inform the bureaus of its finding and seek the concurrence of the Commission.

(2) If it cannot support the proposal, the Personnel and Training Staff will inform the bureau of its finding with the reasons therefor and advise the bureau to reconsider the proposed action. If possible and appropriate, the personnel and training staff will suggest, or explore with the bureau, alternate approaches to any problem the proposal was designed to solve.

(3) If it determines that the proposal is not one requiring consultation with the Commission, the Personnel and Training Staff will inform the bureau accordingly.

In 1978, the Commission was eliminated. However, the Office of Personnel Management ("OPM") and DOJ continued to require consultation prior to reclassification of 20 or more positions. *See* Memorandum on Consultation on Significant Position Classification Proposals from Stephen R. Colgate, Assistant Attorney General for Administration (Jan. 13.1994), Smith Exhibit B ("Colgate Memorandum"). In an April 29, 1981 order, DOJ stated:

11. *REQUESTS FOR ADVICE.* Requests for advice on the classification of positions or the interpretation of classification standards may be directed to the Director, Personnel and Training Staff. Such requests should include a complete statement of the problem and a recommended solution, if one is known. Please note, in this connection, that classification proposals which would affect 20 or more positions in the same or related lines of work must be submitted to the Director, Personnel and Training Staff for pre-audit.

DOJ Order 1511.6; Smith Exhibit D. "In 1987, the Office of Personnel Management (OPM) rescinded a requirement that agencies submit proposed position classification actions affecting 20 or more positions for its prior review and approval. At that time, the Department [of Justice] determined to continue its policy requiring that such proposals receive prior review and approval by the Personnel Staff, Justice Management Division." Colgate Memorandum. The USMS, recognizing the continuation of this policy, amended the USMS Manual, which governs the USMS's operations and administration, on August 17, 1987. Under the section entitled "Delegation of Authority," the USMS Manual states that:

a. Delegations of authority retained by the Department of Justice or the Office of Personnel Management.

****

5) Classification changes which impact upon the grade level of twenty or

more positions (DOJ Order 1511.6; FPM 511.5–4).

Smith Exhibit C.

According to a Memorandum from Henry Romero, the Director of the Personnel Staff at DOJ's Management Division, dated August 13, 1997 ("Romero Memorandum"), DOJ's policy requiring Department approval for classifications affecting 20 or more positions was in effect until January 13, 1994. On January 13, 1994, the Colgate Memorandum canceled DOJ Order 1511.4B, and replaced it with a policy that required only that Bureau Heads notify DOJ of a reclassification affecting more than 20 positions prior to reclassification. The Colgate Memorandum expressly states that "effective immediately the Department will no longer require that components obtain prior *approval* for classification actions affecting significant blocks of positions." Colgate Memorandum (emphasis added); *see* Romero Memorandum. It is undisputed that the USMS never requested approval from DOJ for the creation of a Criminal Investigator, GS–1811–13 position, and DOJ never approved or disapproved of the position. *See* Romero Memorandum.

### b. Summary Judgment Standard:

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-

moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### c. Analysis:

The Fifth Amendment to the United States Constitution states that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. Art. V. The "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth*, the Supreme Court held:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source....

*Id.* at 577, 92 S.Ct. 2701. Plaintiffs do not have a legitimate claim of entitlement to, and therefore, no property interest in, the GS–13 position because, under the regulatory scheme for approving promotions, plaintiffs have not acquired the benefits of that position.[2] Rather, they had at most a mere expectancy of promotion. *See*

---

**2.** Plaintiffs do not allege that they were deprived of a liberty interest.

*Schwartz v. Thompson,* 497 F.2d 430, 433 (2d Cir.1974) (holding that a government employee has no property interest in a promotion unless the employee has a de facto or de jure right to the promotion).

5 U.S.C. § 5107 provides that "each agency shall place each position under its jurisdiction in its appropriate class and grade in conformance with standards published by the Office of Personnel Management.... When facts warrant, an agency may change a position which it has placed in a class or grade under this section from that class or grade to another class or grade." According to the implementing regulations, a reclassification is effective the "date an official with properly delegated authority approves (certifies) the proposed classification." 5 C.F.R. § 511.701(a)(1). A reclassification action is implemented by a personnel action, which must occur within a reasonable period of time following the date of the reclassification. 5 C.F.R. § 511.701(a)(2). A reasonable period of time has been construed to mean no later than four pay periods following the date of the reclassification decision. *See* 53 Comp.Gen. 216 (1973).

Plaintiffs argue that they have a property interest in the GS–13 position because the reclassification was effective on July 7, 1993, when Kaye McWhirter, who had been delegated authority from the USMS to take "final action" on classifications involving grades lower than GS–15, certified the reclassification, and that the reclassification should have been implemented within a reasonable period of time. However, under the regulations, they did not have a property interest in the GS–13 positions because DOJ policy required that there could be no reclassification prior to the review and approval of the reclassification by DOJ, and it is undisputed that DOJ did not review or approve the reclassification.

Plaintiffs argue that DOJ Order 1511.4B was not in effect on July 7, 1993, when McWhirter certified the position, because the Commission had been eliminated in 1978, so consultation with the Commission was no longer required, and the OPM did not require submission of reclassifications affecting 20 or more positions after 1987. However, plaintiffs have pointed to no evidence to contradict defendants' showing that DOJ continued to require DOJ review and approval prior to reclassification of 20 or more positions until 1994, which was after McWhirter had certified the reclassification of over 20 positions to GS–13. DOJ reiterated this policy in 1981, after the elimination of the Commission, stating "[p]lease note ... that classification proposals which would affect 20 or more positions in the same or related lines of work must be submitted to the Director, Personnel and Training Staff for pre-audit." DOJ Order 1511.6. Further, the Colgate Memorandum states that "[i]n 1987 the Office of Personnel Management (OPM) rescinded a requirement that agencies submit proposed position classification actions affecting 20 or more positions for its prior review and approval. At that time, the Department [of Justice] determined to continue its policy requiring that such proposals receive prior review and approval by the Personnel Staff, Justice Management Division." Pursuant to the retention of this policy, the USMS amended its Manual in 1987 to indicate that DOJ retained authority over classification changes which impact upon the grade level of 20 or more positions.

 Plaintiffs next argue that, even if *consultation* with DOJ was required prior to reclassification, DOJ *approval* was not required. This argument is without merit. Plaintiffs rely on a statement from DOJ Order 1511.4B that, if a proposed reclassification lacks sufficient support to present

to the Commission, DOJ will "advise the bureau to reconsider the proposed action" and "suggest" alternate approaches. DOJ Order 1511B(4)(b)(2). However, this procedure was established in the context of DOJ assisting constituent agencies to obtain authorization from the Commission. DOJ Order 1511.4B does not suggest that an agency could reclassify 20 or more positions after DOJ had "advised" the agency to reconsider the action without getting the ultimate approval of the Commission.

Nor is there any evidence that an agency could reclassify 20 or more positions after having consulted with, and failing to obtain approval from, DOJ, after the elimination of the Commission in 1978. On the contrary, the Romero Memorandum states that, from 1987 to 1994, DOJ continued the "policy requiring that such proposals receive prior review and *approval* by the Personnel Staff, Justice Management Division." Romero Memorandum (emphasis added). Were DOJ approval not required prior to 1994, the Colgate Memorandum of 1994, which "canceled" DOJ Order 1511.4B and replaced it with a system that required agencies only to "notify" DOJ of reclassifications affecting 20 or more positions, would be nonsensical. The Colgate Memorandum expressly states that "effective immediately the Department will no longer require that components obtain prior *approval* for classification actions affecting significant blocks of positions." Colgate Memorandum (emphasis added). Further, the USMS Manual recognized that DOJ retained authority over reclassification decisions affecting 20 or more positions.

■ Even if plaintiffs' interpretation of DOJ 1511.4B were correct, and component agencies only had to consult with DOJ prior to the reclassification of 20 or more positions, McWhirter still lacked authority to reclassify the positions. DOJ Order 1511.4B explicitly states that "[h]eads of bureaus *shall* refer to the Personnel and Training Staff for review any proposed action which will affect the grades of 20 or more positions...." DOJ Order 1511.4B (emphasis added). Since it is undisputed that McWhirter never consulted with DOJ prior to the alleged reclassification of the positions, she lacked authority to reclassify those positions.

■ Plaintiffs next argue that DOJ review and approval of the reclassification was unnecessary because the USMS is an "agency" within the meaning of 5 U.S.C. § 5107, which defines "agency" as including "an executive agency," *see* 5 U.S.C. § 5102(a)(1)(A), so it is itself empowered to change a position under 5 U.S.C. § 5107. However, plaintiffs cite no authority for their proposition that the USMS is an "executive agency." To the contrary, 5 U.S.C. § 101, which identifies "Executive departments," does not include the USMS. Furthermore, even if the USMS were an agency, 5 U.S.C. § 5107 merely states that an agency "may" change a position, it does not limit the authority of DOJ to oversee the employment practices of its constituent agencies. Plaintiffs do not argue that DOJ exceeded its statutory authority in requiring that the USMS consult and receive approval from DOJ prior to reclassifying 20 or more positions.

Finally, plaintiffs, citing *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir.1984), argue that, even if they do not have a property interest in the GS–13 positions, they have a legitimate claim of entitlement to the procedural requirements of 5 C.F.R. § 511.701(a). However, as discussed above, defendants did not violate 5 C.F.R. § 511.701(a) because McWhirter did not have properly delegated authority to "approve (certify)" the reclassification.

In sum, the undisputed facts establish that plaintiffs have no property interest in

the benefits of the GS–13 positions. Plaintiffs' claims that McWhirter created a property interest in the positions under 5 U.S.C. § 5107 and 5 C.F.R. § 511.701(a)(1) when she certified the reclassification of the GS–13 positions lacks merit because McWhirter lacked properly delegated authority under 5 C.F.R. § 511.701(a)(1). Therefore, plaintiffs had a mere unilateral expectation of the GS–13 positions rather than a legally protectable entitlement to them.

## CONCLUSION

Defendants' motion for summary judgment dismissing plaintiffs' only claim is granted, and plaintiff's motion for summary judgment is denied. The Clerk of Court is directed to enter judgment for defendants.

**SO ORDERED.**